OPINION OF THE COURT
Millard L. Midonick, J.
This is an application by a niece and a nephew of the decedent to vacate and reopen the decree on accounting which was entered on April 14, 1970. In addition petitioners seek to have themselves be declared to be distributees of the decedent and so entitled to one quarter of the estate each, to direct the Department of Mental Hygiene, and/or the committee for the then sister of decedent, to return to this estate the sum of $13,242.67, which they claim is their share of this estate, and to direct payment to petitioners of that amount from this estate.
The decedent died on July 19, 1966 at which time his sister Mary Ann McCoy was a patient at the Central Islip State Hospital. That sister had been declared to be incompetent and a committee was appointed for her. Service of citation in the above accounting proceeding was served upon that committee for Mary Ann McCoy, upon the Attorney-General of the State of New York, and upon the Assistant Director of the Central Islip State Hospital. Jurisdiction was obtained upon the unknown distributees by publication and a guardian ad litem was appointed for them. Objections were filed to the account by the committee and by the Commissioner of the Department *303 of Mental Hygiene on the ground that the account did not show that Mary Ann McCoy was the sole distributee. A hearing was held thereafter on the objections on December 12, 1969 at- which time documentary evidence was presented by the Attorney-General. Thereafter a decision was rendered by this court in which it was found that the only distributee was Mary Ann McCoy. The court went on to say, "The Attorney General has conceded that the charges made for the care of the objectant’s ward are not in arrears and that her estate as augmented by the inheritance will constitute the source of payment for the cost of her future maintenance.” The decree recited the above and directed the Public Administrator as the administrator of this estate to pay the sum of $26,485.34 to the committee for Mary Ann McCoy.
Mary Ann McCoy died slightly over three months after the entry of this decree on July 25, 1970. The committee for Mary Ann McCoy accounted for the property it received as the committee, which included the above amount. The Department of Mental Hygiene interposed a claim for "accrued charges for care, medical and maintenance of said Incompetent”. That claim for $15,365.02 was approved and the department was reimbursed for that amount. In addition there were commissions paid to the committee, fees paid to the attorney for the committee and compensation for the guardian ad litem in that proceeding. The remainder of $5,240.39 was paid to the Public Administrator who was appointed the administrator of Mary Ann McCoy’s estate.
A brother of both this decedent and Mary Ann McCoy, James McCoy, had predeceased the decedent on February 8, 1965. Letters of administration in his estate, however, were not issued to the Public Administrator until subsequent to those issued in this estate. The accounting in that estate was also filed subsequently. Ultimately the petitioners herein appeared in that accounting (the first indication in the file of their presence being 1974) and were able to prove that they were distributees of that brother: to wit, issue of a predeceased brother of James by the name of Daniel McCoy. Apparently the parties knew of their claim prior thereto because of the long delay. In that proceeding the Attorney-General of the State of New York was also a party. The committee of Mary Ann McCoy had been cited in that proceeding but was not in being on November 7, 1975 when the hearing in that estate was held.
*304 The petitioners herein seek to trace the overpayment from this estate to the Department of Mental Hygiene and to the committee for Mary Ann McCoy. Not only has the Attorney-General of the State of New York appeared in his general capacity herein but the Commissioner of Mental Hygiene has filed an answer in which he asserts affirmative defenses. The Public Administrator has also appeared in this proceeding, having been served as the administrator of this estate and as the administrator of the estate of Mary Ann McCoy, an accounting never having been filed in the latter.
This court has on numerous occasions set aside decrees settling the account of an administrator for various purposes on the basis of its equitable power of reviewing its own decrees. More specifically, a decree on accounting which established the distributees could be set aside and a finding could be made that the distributees were not limited to those who were originally found to be distributees (Matter of Hayden, 176 Misc 1078; Lawyers’ Sur. Co. of N. Y. v Reinach, 25 Misc 150; cf. Matter of Killan, 172 NY 547). Similarly, a decree on accounting can be set aside for the purposes of establishing and recoupment of overpayments to creditors (Chase Manhattan Bank v de Caumont, 27 Misc 2d 497; Matter of Osnato, 166 Misc 618). Clearly, in light of the above case law and the procedures provided therein, and since the petitioners have sufficiently demonstrated their status, the decree on accounting should be vacated, all the necessary parties having been served, and a determination must be made in due course as to the distributees of this estate.
Once this court has determined the distributees, the question presented is whether or not this court can also grant the remaining relief, and direct the return of the funds in question. The position of the Department of Mental Hygiene is that petitioners should proceed to the Supreme Court to determine how much money should be returned to the estate and then to the Court of Claims for a judgment. Clearly such a procedure not only would be time consuming but would encompass identical litigations in two additional courts with the same parties.
The law is well settled that a court of equity can render a decision which not only does justice but which can avoid multiple litigation (Matter of Killan, supra). This court is such a court of equity with the authority to decide all issues, and has in the past determined that where there have been *305 overpayments to distributees or creditors those persons are required to return those assets. (Matter of Droney, 231 App Div 674; Chase Manhattan Bank v de Caumont, supra; Matter of Kapelsohn, 15 Misc 2d 1079; Matter of McCormack, 12 Misc 2d 904; Matter of Osnato, supra.) Based upon the facts of this case such a determination is required.
Initially it should be noted that this court has co-ordinate jurisdiction with that of the Supreme Court on many issues. (Matter of Rothko, 69 Misc 2d 752, affd 40 AD2d 1083; Matter of Finkle, 90 Misc 2d 550, affd 59 AD2d 862; Matter of Zalaznick, 84 Misc 2d 715; Matter of Young, 80 Misc 2d 937.) There is no pending proceeding in the Supreme Court arising out of the accounting by the committee for Mary Ann McCoy. As stated in Dunham v Dunham (40 AD2d 912, 913): "Since the Surrogate’s Court has already acted * * * and the court first assuming jurisdiction should retain it to the exclusion of the other [the Supreme Court] * * * the matter should be transferred to the Surrogate’s Court of Greene County.” Therefore, it is this court’s position that the judgment therein can be theoretically reopened so as to trace the distributions therefrom to the persons, the Department of Mental Hygiene in this case and/or the committee, for the purposes of returning overpayments to this estate. The controlling factor, however, is whether or not the parties to whom distribution was made in that proceeding have either changed their position or were bona fide purchasers for value. (Matter of Osnato, 166 Misc 618, supra.)
In this instance it is clear that the Department of Mental Hygiene was not a bona fide purchaser because it was a party to the original accounting proceeding herein and was a creditor based upon a recalculation of payments to which it was due for a period prior to that accounting proceeding. There were no services rendered based upon the presence of those funds. Moreover, the services rendered would have been provided no matter what the assets of the incompetent were (Mental Hygiene Law, § 43.01 et seq.). In addition the Department of Mental Hygiene has not had a change in position as a result of the distribution from this estate or from the committee after his account. Therefore, the department should be required to return the excess payments.
At this point in the decision it must be noted that the Department of Mental Hygiene was represented in the original accounting proceeding for this estate by the Attorney- *306 General. The decree as indicated above specifically notes a statement by the Attorney-General that there were no outstanding liabilities owed to the Department of Mental Hygiene by the committee for Mary Ann McCoy for her care. The law is clear, however, that there cannot be an estoppel as a result of the statements or actions as hereinabove noted. (Matter of Branche, 22 AD2d 329.) Consequently, the claim before the Supreme Court for additional sums for the care of the incompetent as noted above was not barred.
In addition the courts in other judicial departments have approved the procedures of the Department of Mental Hygiene whereby it recomputes the charges owed by a patient for care at a time subsequent to the time that payments were collected for care of that patient which is the situation herein. (Matter of Osadchey, 53 AD2d 960; Matter of Gnerre, 87 Misc 2d 700.) Whether or not this court agrees with that procedure and finds that such a procedure is valid, when it may include a substantial period of time before the date of decedent’s death, is not an issue before this court. Similarly, this court is not presented with the problem of whether or not the Department of Mental Hygiene was reimbursed for the care of Mary Ann McCoy for a period in excess of six years. (See Matter of Osadchey, supra.) Consequently this court simply must accept the claim as being correct.
The factors applicable to the Department of Mental Hygiene with regard to bona fide purchaser, change of position and dual presence do not apply necessarily to the other persons who received payments out of the committee’s accounting. Whereas the Department of Mental Hygiene was a party to the original accounting of this estate and was a party to the committee’s accounting, the same cannot be said to be the case for the guardian ad litem in that committee’s accounting or the attorney in that committee’s accounting. In effect the Department of Mental Hygiene’s appearance can be determined to be a general one which allows this court to direct a repayment from it (Matter of McCormack, 12 Misc 2d 904, supra). The committee for Mary Ann McCoy did appear in a general way in the prior accounting of this estate; however, in the accounting for the committee the person who was the committee received compensation for his work as the committee and received compensation for his work as the attorney. Clearly he was paid for services rendered which would make him a bona fide purchaser. Whether or not he *307 was overcompensated and whether or not the Supreme Court would have given him a lesser amount is impossible at this time to determine. The Supreme Court and the committee relied upon the distribution from this estate and have changed their positions in accordance with that reliance. As a result this court will not trace assets as against that person. Moreover, the guardian ad litem and the attorney are in the same position if not a better one.
The argument by the Department of Mental Hygiene that the proceeding must at some point be brought or continued in the Court of Claims is misplaced for some of the reasons indicated above. The general appearance in both the prior accounting of this estate and the accounting of the committee permits this court to require the Department of Mental Hygiene to make a repayment as part of this court’s equitable powers in reopening the accountings. (Matter of McCormack, supra.) It should be noted that in the case of Matter of McCormack (supra), the State, which had made a general appearance, was required to repay funds it received which were in excess of the amount to which it was entitled. The estate therein was not required to proceed against the State in the Court of Claims. Similarly, the Court of Claims does not have exclusive jurisdiction here. The Department of Mental Hygiene is subject to this court’s decision and decree, having been a claimant not a respondent, and is therefore now subject to what amounts to a setoff for overpayment.
The procedures which must be followed in this court with respect to the amount to be returned to this estate by the Department of Mental Hygiene include a hearing. Because of the amounts paid out from the committee’s accounting, it is clear that the Department of Mental Hygiene is not liable for the entire overpayment. Not only was there over $5,000 remaining after payment of their claim, which sum was paid to the estate for Mary Ann McCoy, but the expenses of the accounting cannot be allocated solely to the Department of Mental Hygiene. The overpayment must be allocated in some manner, apportioned among all of the parties who received payments out of the fund accounted for by the committee, without regard to the obligation to repay as indicated above. A hearing on this apportionment question is also required.
For the foregoing reasons the application is granted and the decree is set aside and vacated. A hearing shall be scheduled in due course for a determination of the distributees and for a *308 determination of the pro rata share of the overpayment which the Department of Mental Hygiene is required to return to this estate.